Traunig v. US                          CV-95-544-JD  07/29/96

UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW HAMPSHIRE

<u>Gerald W. Traunig</u>

     v.                                    Civil No.  95-544-JD

<u>United States of America</u>


                          O R D E R


     The plaintiff, Gerald Traunig, has filed this pro se action

under the Federal Tort Claims Act ("FTCA") against the defendant,

the United States of America (the "government"), alleging that

the Department of Veterans Affairs ("DVA") negligently processed

his request to refund a DVA-guaranteed mortgage resulting in

losses to the plaintiff.  Before the court is the government's

motion to dismiss (document no. 9) for lack of subject matter

jurisdiction.


                          <u>Background</u>[1]


---

[1]Consistent with the applicable standard of review,
discussed <u>infra</u>, the facts relevant to the instant motion are
recited in a light most favorable to the plaintiff.  However, the
court, constrained by the plaintiff's skeletal pleadings, out of
necessity has incorporated certain facts alleged by the
government where those facts have not been disputed by the
plaintiff.

1

The plaintiff is a veteran who in 1982 obtained a $65,000 loan from Fidelity Guaranty Mortgage Co. in exchange for a mortgage on a residence at 40 Mapleside Drive, Wethersfield, CT ("the property"). At the time, the DVA executed an agreement with Fidelity Guaranty whereby the DVA would guarantee 42.3 percent of the loan under a federal program designed to assist veterans with home purchases. See 38 U.S.C. § 3710; 38 C.F.R. Pt. 36.4300 et seq. Under this program, in the event of default by the veteran the mortgagee could submit a claim to the DVA which would, in turn, pay an amount equal to the extent of the guarantee less certain expenses. A related statute, 38 U.S.C. § 3732(a)(2), authorizes the DVA to refund a guaranteed loan by paying the balance due the loan holder in exchange for the note. Under this arrangement, the DVA actually holds the loan and collects payments directly from the veteran.

At some point during 1985 the plaintiff's loan payments became erratic and/or incomplete. On October 22, 1985, Fidelity Guaranty sold the loan to Knutson Mortgage & Financial Corp. According to the government, the default was cured by June 5, 1986.

The plaintiff again ceased making regular loan payments on or about August 1, 1993. Knutson notified the DVA of the

2

plaintiff's loan delinquency by a "Notice of Default" dated October 18, 1993.[2]  Later that month Knutson notified the DVA of its intent to foreclose.

In response to these notices the DVA entered into a series of communications with the plaintiff concerning his options with respect to the property.  By letter of November 25, 1993, the plaintiff formally requested that the DVA refund the loan under 38 U.S.C. § 3732.  On or before January 31, 1994, the plaintiff completed and submitted the financial disclosure form the DVA requires to process a loan refunding application.  The plaintiff also asked that the DVA refinance the loan at an annual rate of less than twelve percent.  Soon thereafter the DVA requested that Knutson provide a property appraisal and forebear from foreclosing pending its decision on the refunding application.  On February 9, 1994, Knutson agreed to forbear and, in late March, provided the requested appraisal.

At some point during October 1994, the plaintiff sought an update on the status of his pending application.  In response, the DVA requested that the plaintiff complete another financial disclosure form to update the one he submitted roughly nine

_____

[2]The DVA received Knutson's notice of default on or about November 3, 1993.

3

months earlier.  The plaintiff complied on or before November 25, 1994.

Upon receipt of the updated financial disclosure, Bill Marko, the chief of loan service and claims at the DVA's Manchester, New Hampshire office, reviewed the plaintiff's file and, by correspondence dated December 13, 1994, denied the request for refunding on the ground that the plaintiff had reported an insufficient income.  At the time the DVA recommended that the plaintiff list the residence for sale in order to retain whatever equity position he had in the property.

In the subsequent months the DVA, at the plaintiff's request, reviewed its prior decision not to refund.  The DVA did not change its position following the additional review.

On or about December 14, 1994, the DVA notified Knutson of its decision not to refund the loan and instructed the mortgage company to proceed with foreclosure.  The government has represented that the plaintiff continues to occupy the property given the pendency of his challenge to the foreclosure.

## Discussion

In its motion, the government asserts that the court lacks subject matter jurisdiction because the allegedly tortious

4

conduct falls within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). In the alternative, the government asserts that this action does not fall within the FTCA's general waiver of sovereign immunity because the plaintiff has failed to establish that it owed the plaintiff an actionable duty under state law to process his request for loan refunding. The plaintiff objects to the motion on a variety of grounds, addressed infra.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) challenges the statutory or constitutional power of the court to adjudicate a particular case. 2A James W. Moore et al., Moore's Federal Practice ¶ 12.07 (2d ed. 1995). The party seeking to invoke the court's jurisdiction bears "the burden to establish by competent proof that jurisdiction exists." Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)). However, the court assumes the truthfulness of the facts concerning jurisdiction as alleged by the pleading, and the case may be dismissed only if the plaintiff fails to allege an element necessary for jurisdiction to exist. Id.; see Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) ("court takes factual allegations in complaint as

5

true, indulges every reasonable inference helpful to the plaintiff's cause"). The court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Irving v. United States, No. 81-501-M, slip op. at 4 (D.N.H. March 13, 1996) (quoting Lex Compute & Mgmt. Corp. v. Eslinger & Pelton P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)). Finally, when considering the instant motion, the plaintiff's pro se status requires the court to hold his complaint to a less stringent standard than that bestowed on pleadings drafted by attorneys. Eveland v. Director of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)(per curiam)).

The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity for those tort actions alleging damages caused by federal employees while acting within the scope of their employment where the government, if a private party, would be liable under the law of the place where the tort occurred. 28 U.S.C.A. § 2674, 1346(b) (West 1994). However, there is a battery of statutory exceptions to this waiver of immunity, 28 U.S.C.A. § 2680 (West 1994), and each exception, as well as the FTCA's overall waiver of immunity, is strictly construed in favor of the United States, e.g., Sweeney v. Easter

6

Seal Society, No. 95-15-M, slip op. at 5-6 (D.N.H. Dec. 7, 1995) (citing Akutowicz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988)). The court lacks subject matter jurisdiction over cases which fall within these exceptions. E.g, Attallah v. United States, 955 F.2d 776, 783 (1st Cir. 1992).

The "discretionary function" exception bars

> [a]ny claim based upon an act or omission of any employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a). The exception shields the government from lawsuit even where the federal employee negligently performed or abused the discretionary authority or function. See Ayer v. United States, 902 F.2d 1038, 1041 (1st Cir. 1990) ("If a discretionary function was involved, the fact that critical factors were not considered or that the decision was negligently made will not bring the challenged conduct outside of the exception").

The Supreme Court has articulated a two-step analysis to determine whether a given act or omission falls within the discretionary function exception. First, the discretionary function exception covers only acts or omissions which are

7

discretionary in nature, that is, involving an element of judgment or choice.  United States v. Gaubert, 499 U.S. 315, 322 (1991).  The nature of the conduct, rather than the status of the actor, governs whether the exception applies. Id.; Attallah, 955 F.2d at 783.  If the challenged act or omission does not involve the exercise of choice or judgment, or if federal statutes, regulations, or policies specifically prescribe a course of action for an employee to follow, then the discretionary function exception does not apply.  Gaubert, 499 U.S. at 322; Attallah, 955 F.2d at 783.  Second, the discretionary function exception, when properly construed, protects only government actions and decisions based on considerations of public policy.  Gaubert, 499 U.S. at 322-23. Therefore, a lawsuit is barred only where the federal employee's judgment or choice furthered the purposes of a regulatory regime which gives an employee discretion.  Id. at 1275.[3]  This requirement reflects the judiciary's traditional

---

[3]The Supreme Court explained that

[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception. . . .  If [a Government employee] drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply.  Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be

8

reluctance to "second guess[]" those legislative and administrative decisions grounded in social, economic, or political policy.  See id. at 323; Attallah, 955 F.2d at 783.

The plaintiff alleges that he suffered a variety of economic losses, some related to his treatment for emotional distress, from the government's "fail[ure] to process a mortgage refunding application, after claimant completed all the steps, imposed by the VA, to expedite timely processing."  Complaint at ¶ 2.  The complaint, even when viewed from the indulgent perspective accorded pro se litigants, cannot survive the instant motion to dismiss.

As a threshold pleading matter, the plaintiff has failed to "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."  Gaubert, 499 U.S. at 324-25.  Likewise, the plaintiff has neither alleged nor implied that the government's responsibilities for processing veteran requests for loan refunding involve, even in part, non-discretionary duties imposed by federal law, i.e., by statute, agency regulation, or administrative directive.  In arriving at

said to be grounded in regulatory policy.
Gaubert, 499 U.S. at 325 n.7.

9

this decision, the court has taken cognizance of the documentary evidence attached by the plaintiff to his opposition to the instant motion.  Specifically, the court finds that the DVA's statement that "a review of your file indicates there has been a refunding request in process since January 1994 and VA has failed to complete the process" was merely an acknowledgment of the pendency of the plaintiff's request for refunding and does not establish that the DVA's processing of the request involved anything other than a discretionary function.  See Plaintiff's Opposition to Motion to Dismiss ("Plaintiff's Opposition"), Exhibit A (October 24, 1994, correspondence from Bill Marko, DVA chief of loan service and claims).

Aside from the inadequacy of the complaint -- itself a grounds for dismissal -- the court finds the government has established with competent evidence that the conduct complained involves a high degree of judgment and choice, the key indicia of a discretionary function under the first prong of Gaubert.  See Affidavit of Leonard Levy, assistant director for loan and property management for the DVA's loan guaranty service ("Levy Affidavit") (noting, inter alia, that loan refunding is discretionary decision of local VA offices; local offices enjoy "latitude to establish their own operational procedures" and are

10

not governed by national "mandatory" policies; there is no "formal or mandatory application procedure," no procedure or bar on the reconsideration of a denied application, and no formal appeal procedures; and "no mandatory time frame in which the VA must decide whether or not it will refund a loan"); accord Affidavit of Bill Marko, chief of the DVA's regional loan service & claims section ("Marko Affidavit") (noting that "[u]nder the statute, regulations, and manual guidelines, the decision to refund a mortgage lies completely at the discretion of the officials of the DVA who have been delegated the Secretary's authority" and indicating that the refund decision is based on a variety of criteria, including the circumstances of the default, the veteran's ability to pay, relative risk of loss to the DVA, and the market value of the property). These affidavits, neither of which has been challenged by the plaintiff, indicate that the refund application and approval process is somewhat amoebic, varies from office to office, and ultimately requires the highly-individualized assessments emblematic of discretionary functions.

The court's finding that the DVA's loan refunding activities involve a high degree of choice and individual judgment is also consistent with the plain meaning of the statute, i.e., "the Secretary may, at the Secretary's option, pay the holder of the

11

obligation . . . ," 38 U.S.C. § 3732(a)(2) (emphasis supplied), and is in full accord with prior court interpretations of the DVA's authority in this area. For example, in Rank v. Nimmo, 677 F.2d 692 (9th Cir.), cert. denied, 459 U.S. 907 (1982), the Ninth Circuit ruled that the DVA's decision whether or not to exercise a loan assignment-refunding option is a discretionary function not reviewable under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). The court reasoned that

> [t]he decision to accept an assignment of a veteran's loan necessarily involves a consideration of myriad factors, including, but not limited to, internal VA management considerations relating to budget and personnel, the risk of loss to the VA, the adequacy of prior loan servicing, and the circumstances of the borrower's default. The application of these factors, as well as the determination of other relevant factors and the weight attributed to each, has been entrusted to the unfettered discretion of the VA.

677 F.2d at 700-01 (also noting that the statutory language of 38 U.S.C. § 1816(a), the predecessor to 38 U.S.C. § 3732(a), "indicates that Congress simply intended to empower the VA to refund, at its discretion, loans that are in default"); see also First Family Mortgage Corp. v. Earnest, 851 F.2d 843, 843-45 (6th Cir. 1988) (noting that internal VA manuals on loan refunding are "general statements of agency policy and procedure" and "do not create an enforceable mandatory . . . 'refunding duty' on the part of the VA").

12

The court also finds that, at stage two of the Gaubert analysis, the DVA's conduct "involved the kind of policy judgment that the discretionary function exception was designed to shield." 499 U.S. at 332. To a large extent this finding is dictated by the court's determination, supra, that the relevant decision-making process is entrusted to DVA discretion because

> if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

> * * * *

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

Gaubert, 499 U.S. at 324; accord Kane v. United States, 15 F.3d 87, 89 (8th Cir. 1994) ("when governmental policy allows for the exercise of discretion, an agent's acts when exercising that discretion are presumed to be grounded in the policy"). This presumption places the burden on the plaintiff to "show[] that the [DVA's] actions [or inactions] were not grounded in the [agency's] policy." Pond v. Majercik, No. 94-225-M, slip op. at 18-19 (D.N.H. Sept. 19, 1995). The plaintiff cannot as a matter of law satisfy this burden given the inadequacy of his complaint

13

and responsive pleadings noted supra, i.e., the absence of factual allegations which, if true, "would support a finding that the [DVA's] conduct was not the kind that 'can be said to be grounded in the policy of the regulatory regime.'" Id., slip op. at 20 (quoting Gaubert, 499 U.S. at 325).

The court has given careful consideration to the plaintiff's objections that, inter alia, the discretionary function exception does not bar lawsuits alleging governmental inaction; the court should give res judicata effect to the magistrate judge's finding of subject matter jurisdiction; the motion is untimely; and that there is an analogous private right of action under Connecticut tort law. The court addresses the arguments seriatim.

The plaintiff asserts that the discretionary exception bars only affirmative conduct, i.e., "'action' and 'acting,'" and does not immunize the government from tort immunity because "the instant case concerns, exclusively, admitted 'inaction' (the absence of action)." Plaintiff's Objection to Motion to Dismiss at 1. The argument fails because this lawsuit sounds in tort, an area of the law that, as a general matter, does not distinguish between negligence arising from an affirmative act and that arising from the failure to act. See generally Black's Law Dictionary at 1023-33 (6th ed. 1990) ("Negligence . . . is the

14

doing of some act which a person of ordinary prudence would not have done under similar circumstances or failure to do what a person of ordinary prudence would have done under similar circumstances") (quotation omitted).  Thus, the court finds that the DVA's tortious failure to act, as alleged by the plaintiff, is subject to the same principles of sovereign immunity, including the discretionary function exception, applied in those cases alleging affirmative governmental misconduct.

The plaintiff next asserts that the court is bound by the magistrate judge's earlier determination that the court possesses jurisdiction over this dispute.  The plaintiff also argues that the government's motion is untimely.

The plaintiff correctly notes that by memorandum order of December 21, 1995, the magistrate judge ruled that

> given that plaintiff initiates his action against the United States, the court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1346.  Additionally, in light of the resemblance between plaintiff's claims and actions arising from the FTCA, this court is vested with jurisdiction.  See 28 U.S.C.A. § 1346(b).

Traunig v. United States, No. 95-544-JD, pretrial order at 5-6 (D.N.H. Dec. 21, 1995) (Muirhead, M.J.).  However, the order concludes:

> Without expressing an opinion on the merits of the plaintiff's claims, the court finds that the plaintiff,

15

> at this stage of the proceeding, has invoked the
> jurisdiction of this court.

Id. at 6 (emphasis supplied). It is apparent from the face of the order that the magistrate judge's rulings were issued pursuant to his initial review of the plaintiff's pro se complaint, 28 U.S.C. § 636. See id. at 1. The rulings are provisional in that the purpose of the initial review is not to resolve the merits of the lawsuit but, instead, to determine whether one or more of the claims alleged sets forth a sufficient jurisdictional basis for the opposing party to be served. See generally Local Rule 4.3(d)(1) (local rule governing preliminary review of pro se actions filed after January 1, 1996). The magistrate judge's order does not bar the defendant from later challenging the court's jurisdictional capacity so long as the defendant presents the objection, along with any other affirmative defenses, in accordance with Rule 12. In the case of an objection to the court's exercise of subject matter jurisdiction, the Federal Rules explicitly provide that such a defense is never waived and, in fact, may be presented "whenever" it appears to the parties or the court that the jurisdictional basis is in question. Fed. R. Civ. P. 12(h)(3). Moreover, in this case the government presented its jurisdictional defense at the earliest opportunity, i.e., its first substantive pleading in

16

the case, by filing the instant motion within the prescribed deadline as extended by endorsed court order of April 9, 1996. Accordingly, neither the law of the case doctrine nor principles of res judicata defeat the government's timely motion to dismiss.

Finally, the plaintiff's argument that the common law of Connecticut provides an analogous private right of action against the government is irrelevant. Because the court lacks jurisdiction, the case must be dismissed regardless of whether the government owed the plaintiff an actionable duty under state law to process his refunding application.

The court finds that instant action, construed liberally in accordance with the plaintiff's pro se status, falls squarely within the discretionary function exception to the FTCA's limited waiver of sovereign immunity as that exception has been interpreted by Gaubert. The court lacks subject matter jurisdiction and the case must be dismissed.

<u>Conclusion</u>

The court lacks subject matter jurisdiction over the plaintiff's claims. The motion to dismiss (document no. 9) is granted. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

July 29, 1996

cc:  Gerald W. Traunig, pro se
     Gretchen Leah Witt, Esquire

18