Victor M. **MELENDEZ COLON,**
**et. al., Plaintiffs,**

v.

**UNITED STATES of America,**
**DEPARTMENT OF THE**
**NAVY, Defendant.**

No. Civ. 97–2192(JP).

United States District Court,
D. Puerto Rico.

July 2, 1999.

Erick Morales, Carolina, P.R., for plaintiff.

Lisa E. Bhatia Gautier, Assistant U.S. Attorney, Hato Rey, P.R., for defendant.

## OPINION and ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

Plaintiff Víctor M. Meléndez–Colón ("Meléndez") brought this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 ("FTCA"), to recover money damages for physical injuries resulting from a collision with a United States Navy vehicle, driven by the deceased Captain Mark Ronald Peterson ("Captain Peterson").[1] The parties had stipulated the negligence of Captain Peterson in causing the accident at issue; thus, on July 7 and 8, 1999, the Court held a bench trial solely to determine the issue of damages.

■ On the eve of trial, however, Defendant United States of America disputed the Court's jurisdiction over this case under the FTCA, asserting that at the time of the accident, Captain Peterson was not acting within the scope of his employment. A jurisdictional prerequisite to bringing a claim against the United States under the FTCA is that the government employee was acting within the scope of his employment. Thus, the Court ordered the parties to submit post-trial briefs and allowed them to engage in discovery related to the scope of employment issue. On November 18, 1998, the Court held a Pretrial Conference where the Court ordered Plaintiffs to file a motion as to why the Court should grant an Evidentiary Hearing on the scope of employment issue. The Court granted Plaintiffs' motion and scheduled an Evidentiary Hearing for June 23, 1999. The Court also determined that Plaintiffs' proffer of evidence in support of their position, the Military Sea Lift Command Atlantic or "MSCLANT" Instructions and Judge Advocate's Final Investigative Report, were admissible at the Evidentiary Hearing over Defendant's objections. Based on the evidence presented at the June 23, 1999 Evidentiary Hearing and after due deliberation, the Court renders its findings of fact and conclusions of law.

### II. Findings of Fact

1. On May 31, 1993, at around 10:00 p.m., a collision occurred on Route 3 in Ceiba, Puerto Rico, between a car driven by Plaintiff Meléndez, which had no other passengers, and a U.S. Navy vehicle driven by Captain Peterson, with four passengers: First Officer Crook, Cargo Mate Wheeler, Lieutenant Gibson, and OSC Pickering.

2. Captain Peterson was killed in the accident, and Meléndez and the passengers in the car driven by Peterson were injured.

3. At the time of the accident, Captain Peterson had a Blood Alcohol Level of 0.17, above the legal limit of 0.10. The blood alcohol levels of the four survivors in Captain Peterson's car were in excess of 0.10.

4. The vehicle driven by Captain Peterson and involved in the accident was a sedan, one of two vehicles issued to the USNS LEGROY GRUMMAN ("the Ship"), pursuant to a request made by the Ship on May 31, 1999 after it arrived at Roosevelt Roads Naval Station. The vehicle was considered a U.S. Naval vehicle.

5. Captain Peterson asked Timothy J. Wood, Medical Service Officer, to accompany him and the other four officers out of town on May 31, 1993. Wood declined to join them. (Enc.9(23) of the Judge Advocate General Final Investigative Report Concerning the Accident ("JAG Report").) Captain Peterson then left

---

1. The Complaint included a cause of action for emotional damages for Meléndez's wife and Co–Plaintiff, Sandra Castro Miranda. At the Initial Scheduling Conference, however, the parties stipulated that these claims were barred against the United States because Castro did not file an administrative claim. Further, Meléndez stipulated that he did not suffer any "psychiatric" damages. (ISC Order, docket No. 17 at p. 4, § V ¶ 3.)

the base with the sedan and four officers.

6. The stamp which indicates whether or not a vehicle is authorized for off-station use on the form entitled "For Vehicle Utilization Record," was left blank and never filled out for Captain Peterson's off-base trip on May 31, 1993. (Enc. 11 of JAG Report). It is unclear whether Captain Peterson was authorized to take the vehicle off base.

7. Captain Peterson and his passengers stopped at two bars after leaving the base and prior to the accident.

8. As "master of the vessel" or Captain of the Ship, Captain Peterson was on duty 24 hours a day.

9. Captain Peterson had authority to take the vehicle off base for "official purposes."

10. The Military Sea Lift Command Atlantic or "MSCLANT" Instruction 11240.1C (3)(d) states that "Official Usage" of government vehicles includes transportation for "morale purposes." Specifically, "[t]ransportation may be provided for authorized group activities for morale purposes when it has been determined that failure to provide such service would have an adverse effect on the morale of service members." The term "morale purposes" is open to interpretation, and includes but is not limited to, group activities for the entire command. In addition, if an activity is an authorized activity for morale purposes, attendance would be mandatory and not discretionary.

11. Captain Peterson, as Captain of the Ship, could have made the determination that an "authorized group activity" was for "morale purposes."

12. The Navy will make a "line of duty" determination, meaning a de-termination of whether one was acting as a military member, for the purpose of determining Federal Employees Compensation Act benefits. There is a presumption that the member was acting in the line of duty. "Line of duty" determinations are not made for civilian officers or for deceased members.

13. Pursuant to Navy regulations regarding misconduct, being involved in an accident does not in itself constitute misconduct. (Enc. 27 of JAG Report, section 0218). In addition, for intoxication to be considered misconduct, there must be a showing of impairment and that the impairment was the proximate cause of the injury. (Enc. 27 of JAG Report, section 0221). If misconduct is found, the officer is then considered not to have been acting in the line of duty.

14. Captain Peterson was not an active military officer, but rather, a Civilian Merchant and Captain of the Ship.

15. Because Captain Peterson died in the accident at issue, no misconduct investigation was performed nor line of duty determination made as to his actions.

### III.  Conclusions of Law

1. The Federal Tort Claims Act gives federal district courts jurisdiction over claims against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Sheridan v. United States*, 487 U.S. 392,

398, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988); *United States v. S.A. Empresa de Viacao Aérea Río Grandense,* 467 U.S. 797, 807–08, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)

2. The FTCA is a "broad waiver of sovereign immunity, granting district courts jurisdiction to hear tort suits against the United States for damages caused by its employees acting within the scope of their employment." *Attallah v. United States,* 955 F.2d 776, 782 (1st Cir. 1992). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir.1996).

3. The Motor Vehicle law of Puerto Rico, 9 L.P.R.A. 1751, making the owner of a motor vehicle automatically liable for damages caused through its use, is a permissive use statute. The presumption of liability in this statute, however, does not apply to claims under the Federal Tort Claims Act. *See Rodriguez v. U.S.,* 455 F.2d 940, 941 (1st Cir.1972) (citations omitted). Thus, the fact that the sedan was a Navy vehicle does not mean that the United States is automatically liable for damages caused by the vehicle. Rather, the Court does not have jurisdiction over the instant case and the United States cannot be liable under the FTCA unless Captain Peterson was acting within the scope of his employment as determined by Puerto Rico Law. 28 U.S.C. 1346(b); *Aversa,* 99 F.3d at 1209.

4. To show that Captain Peterson was acting within the scope of his employment under Puerto Rico law, Plaintiffs must prove that in driving the vehicle that struck Plaintiffs, Captain Peterson: (1) had a desire to serve, benefit, or further his employer's business or interest; (2) was performing an act reasonably related to the scope of employment; and (3) was not motivated or prompted by purely personal motives. *See Attallah,* 955 F.2d at 782 (citing *Borrego v. United States,* 790 F.2d 5, 7 (1st Cir.1986)).

5. Captain Peterson's off-base trip *to two local bars is distinct from* situations that have been determined to be within the scope of employment under Puerto Rico law. For example, in *Borrego v. United States,* the First Circuit found an area supervisor of the Department of Agriculture to be acting within the scope of his employment when he struck another car while driving an assigned vehicle from his home to the office. The *Borrego* Court held that based on the facts of the employee's job requirements, specifically that the employee used the assigned vehicle as an essential part of his work and was obliged to take it home, the employer was the principal beneficiary of the more efficient use of the employee's time. *Borrego,* 790 F.2d at 7. There is no evidence that the Navy benefitted at all from Captain Peterson's off-base trip. Although a Navy Captain is considered "on duty" 24 hours a day, utilizing a vehicle and/or driving to local bars was not part of Captain Peterson's "essential" duties.

6. Further, as indicated in the Findings of Fact, it is unclear whether the off-base use of the sedan on May 31, 1993 was authorized. As captain of the Ship, however, Captain Peterson had the authority to utilize Navy transportation for "official purposes," including "morale purposes." If Captain Peterson had utilized Navy transportation on May 31, 1993 to further "morale purposes" as defined by the Navy/MSCLANT regulations, he would have been serving, benefitting, or furthering the Navy's interests and thus, acting

within the scope of his employment. *Id.* Nevertheless, there is no indication that Captain Peterson intended his trip with four other officers to two local bars to be an authorized activity for "morale purposes." No one was "ordered" to participate in the off-base trip, and in fact, Medical Service Officer Wood declined to join the group. In addition, the type of activity involved—drinking at two local bars with a small group of officers—is not what is generally considered to be authorized activity for morale purposes.

7. The Court concludes that Captain Peterson did not intend his off-base trip to serve the Navy, but rather, his motives were purely personal. *See Attallah*, 955 F.2d at 781 (for act to be considered within the scope of employment, it must have been motivated "at least in part, with the purpose of serving his employer.") (quoting *Rivera v. Maldonado*, 72 D.P.R. 479 (1951)) The Court finds that Captain Peterson was not acting in the scope of his employment at the time of the accident. Therefore, as the Court does not have jurisdiction over the United States in instant case, it hereby **DISMISSES** the above-captioned Complaint.

**SO ORDERED.**