KENNETH BORDEN & another[1] *vs.* BETTY GIBSON
ASSOCIATES, INC., & another.

No. 89-P-1150.

Suffolk. December 12, 1990. - July 16, 1991.

Present: SMITH, FINE, & PORADA, JJ.

*Negligence*, Real estate broker. *Real Property*, Sale. *Sale*, Real estate.
*Consumer Protection Act*, Unfair or deceptive practice.

In an action against real estate brokers for negligence in the performance
    of their duties, the plaintiffs failed to prove a causal connection between
    the alleged negligence of the defendants in failing to list the plaintiffs'
    property as a multifamily residence and the plaintiffs' alleged injury
    (not having received a higher price). [52-55]
Plaintiffs in a civil action seeking damages for real estate brokers' negli-
    gence in the sale of the plaintiffs' property failed to prove that the de-
    fendants committed an unfair or deceptive act or practice in violation of
    G. L. c. 93A. [55-56]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 1, 1985.

The case was tried before *Paul K. Connolly*, J.

*Marc S. Seigle* for Betty Gibson Associates, Inc.

*James P. Long* for the plaintiffs.

SMITH, J. The plaintiffs, Kenneth and Margaret Borden,
brought an action in the Superior Court against the defend-
ants, Betty Gibson Associates, Inc. (Gibson), and Century
21, Silva Realty (Silva), both licensed real estate brokers.
The plaintiffs claimed that the defendants were negligent in
the performance of their brokerage duties, and had engaged
in unfair or deceptive practices in violation of G. L. c. 93A.

The negligence claim was tried to a jury. That claim was
based on the plaintiffs' assertion that the defendants negli-

---

[1]Margaret Borden.

gently failed to examine the appropriate city records to ascertain whether certain property they owned could be sold as a multifamily unit. If the records had been checked, the defendants would have discovered that the property could indeed be occupied as a multifamily dwelling and might have commanded, at the particular time, a higher price than a single-family residence.[2] The jury returned a verdict for the plaintiffs on the negligence claim against both defendants and awarded $19,750 in damages. Gibson appealed.[3] The trial judge sitting without a jury found for the defendants on their G. L. c. 93A claim, and judgment was entered in their favor. The plaintiffs filed a cross-appeal.

1. *Gibson's appeal.* During the jury trial both defendants filed, at appropriate times, motions for directed verdicts and for judgment notwithstanding the verdicts. The judge denied all of the motions. Gibson claims error.

In reviewing Gibson's claim "we construe the evidence most favorably to [the plaintiffs], *Boyle* v. *Wenk*, 378 Mass. 592, 593 (1979), to determine 'whether, "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff[s]." ' " *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 847-848 (1983), quoting from *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), and *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

We summarize the evidence in the light most favorable to the plaintiffs. They owned, as tenants by the entirety, residential property in Charlestown. At the time they purchased the property in 1968, there were three apartments in the building. The city records stated that the legal occupancy was as a three-family dwelling. Over the years, they converted the apartments into their single-family home. In February, 1984, the plaintiffs decided to sell the property. At the

---

[2]Although not entirely clear from the record, a dwelling designated as a multifamily unit could apparently be converted into condominium units without a conversion permit.

[3]Silva has not appealed from the judgment entered against it.

time, they were in the process of making major interior repairs to the dwelling. An agent of Gibson told the plaintiffs that the house might bring $100,000 if they were willing to keep the house on the market for a while. Otherwise, for a quick sale, the property should be listed for $89,500. The plaintiffs instructed the agent to list the property for $89,500 because they wanted to sell it as soon as possible.

The real estate market in Charlestown in 1984 was very active. There was more demand for multifamily real estate than single-family property. Because of the ongoing repair work to the interior, the house was listed as a "shell" without reference to single or multifamily status. An offer of $81,000 was received on March 21, 1984, and an offer for $72,000 was received on April 2, 1984. Those offers were contingent on satisfactory inspections. The plaintiffs accepted each offer, but both offers were later withdrawn after inspection of the property revealed that it required extensive repairs.

On May 7, 1984, an offer of $65,000, with no inspection contingencies, was made to the plaintiffs. It was accepted.[4] The property was sold on July 5, 1984 for $65,000. By the time of the sale neither defendant had checked the city records to determine whether the dwelling had multifamily or single-family status. One of the purchasers was a broker with the defendant, Silva. She bought the property in her individual capacity.

Within a few days after the sale, a third party offered to buy the property from the persons who had purchased the property from the plaintiffs. A purchase and sale agreement was signed on July 16, 1984, and the property was sold on August 14, 1984, for $100,000. The subsequent purchasers developed the property as a three-unit dwelling.[5]

---

[4]After the offer was accepted, it became necessary for Kenneth Borden to petition the Probate Court for the appointment of a guardian for his wife and obtain a license to sell her interest in the property. The court appointed a guardian who undertook to have an appraisal of the property. The property was appraised at $65,000, and the court issued a license to sell the property at that price.

[5]Gibson filed a motion in limine requesting that the Superior Court judge exclude any of the plaintiffs' evidence concerning appraisals of the

Most actions against real estate brokers sound in contract. See *Erikson* v. *O'Brien*, 362 Mass. 876 (1972). This claim, however, is based on negligence and we use familiar principles concerning that cause of action in evaluating the sufficiency of the evidence.

"In order to warrant the plaintiff[s'] jury verdicts there must be 'sufficient evidence (1) to warrant a finding of negligence on the . . . defendant['s] part, and (2) to warrant a finding that there was a causal connection between such negligence, if found, and the plaintiff[s'] injuries.' " *Zezuski* v. *Jenny Manufacturing Co.*, 363 Mass. 324, 327 (1973), quoting from *Berardi* v. *Menicks*, 340 Mass. 396, 401 (1960). Assuming, without deciding, that there was a showing of negligence on Gibson's part, we move on to the causation issue.

The question of causation is generally one of fact for the jury. *Zezuski* v. *Jenny Mfg. Co.*, *supra* at 327. However, "[t]he jury are not allowed to speculate on the causal relationship between the negligence and the injury . . . '[t]here must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts.' " *Zezuski* v. *Jenny Mfg. Co.*, *supra* at 328, 329, quoting from *Bigwood* v. *Boston & No. St. Ry*, 209 Mass. 345, 348 (1911).

There was no evidence that the parties who had declined to purchase the property would have acted differently and purchased the property had it been listed as a multifamily residence. The uncontradicted evidence of the reasons for the withdrawal of their offers was the condition of the property, not its status as a residence. There was no evidence that the

---

property for more than $65,000. The basis for the motion was G. L. c. 202, § 38, inserted by St. 1976, c. 549, which states in relevant part: " . . . [I]t shall be conclusively presumed that the amount of the advantageous offer stated in said petition for license to sell real estate is the highest possible price obtainable for the real estate described in such petition . . . ."

The judge denied the motion and evidence was received of appraisals that placed the value of the plaintiffs' property at more than $65,000. Gibson claims error. We do not address this issue because we find for Gibson on its other issue.

persons who purchased the property from the plaintiffs would have paid more money if the property had been listed as a multifamily dwelling. There also was no evidence from any prospective purchaser that he or she would have paid more for the property had it been listed as a multifamily residence within the relevant time frame. Finally, uncontradicted evidence showed that an agent of Gibson informed the plaintiffs that they might be able to obtain $100,000 for the property (the very amount the third party paid for the property) but only if the plaintiffs were patient. The plaintiffs, however, chose to go for the quick sale and told Gibson to try to sell the property at a lower price.

"While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable." *Bigwood* v. *Boston & No. St. Ry.*, 209 Mass. at 348. A recovery in a negligence case cannot be based on conjecture or speculation as to causation. *Landon* v. *First Natl. Stores, Inc.*, 353 Mass. 756, 757 (1967). Based on this record, Gibson's motion for judgment notwithstanding the verdict should have been allowed.[6]

2. *The plaintiffs' cross-appeal.* The plaintiffs claim that the judge committed error in entering a judgment for the defendants on the plaintiffs' G. L. c. 93A claim. The judge in a well-crafted memorandum of decision ruled that the plaintiffs failed to establish by evidence that the defendants committed an unfair or deceptive practice in violation of c. 93A. The judge found that an agent of Gibson told the plaintiffs that they might be able to realize about $100,000 on the sale of the property, but only if they were willing to be patient. The plaintiffs, however, chose to lower the price in order to sell as soon as possible. The judge noted that there was no evidence that the withdrawn offers would have been higher if

---

[6]We do not decide whether a real estate broker has an affirmative duty to advise a client to advertise for sale, real estate on the basis of potential uses which are different from those for which the property is used.

the property had been marketed as a multifamily residence. Therefore, for these and other reasons stated in the judge's memorandum of decision, we reject the plaintiffs' arguments.

The judgment for the plaintiffs on the negligence claim against Gibson is vacated and a new judgment shall be entered dismissing the action against Gibson. The judgment for the defendant Gibson on the G. L. c. 93A claim is affirmed.

*So ordered.*