William MAGEE, Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 96–2357.

United States Court of Appeals,
First Circuit.

Heard May 8, 1997.

Decided July 31, 1997.

**2**

Francis J. Caruso, III with whom Paul J. Gillespie and Gillespie & Associates, Lynnfield, MA, were on brief for appellant.

Julie S. Schrager, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, Boston, MA, was on brief for appellee.

Before STAHL and LYNCH, Circuit Judges, and O'TOOLE*, U.S. District Judge.

STAHL, *Circuit Judge.*

Plaintiff-appellant William Magee appeals the grant of summary judgment in favor of defendant-appellee, the United States, with respect to his personal injury action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA").

*Background*

This case arose out of an automobile accident in which Peter Puzzanghera, an outpatient at the Veterans Administration Medical Center in Bedford, Massachusetts ("VAMC") rear ended Magee. As a result of the accident, Magee suffered physical injuries and property damage for which he seeks damages from the federal government. By way of background, we describe the relationship between the Veterans Administration ("VA")

and Puzzanghera in order to explain how Magee came to sue the United States.

Puzzanghera has long battled chronic, paranoid schizophrenia. In August, 1988 he was involuntarily committed to Metropolitan State Hospital. In July, 1989, he was transferred to VAMC where he remained as an inpatient until late June, 1990. On June 20, 1990, he was discharged to the Fort Hill Community Care Home and continued to receive treatment at VAMC on an outpatient basis.

Puzzanghera's treatment at VAMC included periodic intermuscular injections of Prolixin Decanoate ("Prolixin"). VAMC physicians prescribed Prolixin to help Puzzanghera manage his schizophrenia. Following the onset of this treatment, Puzzanghera experienced restlessness and difficulty in moving his tongue, side effects that his doctors have attributed to the Prolixin.

VAMC has established a policy entitled Veterans Driver Evaluation Program for the purpose of aiding veterans in obtaining driver's licenses from the Massachusetts Registry of Motor Vehicles ("RMV"). Pursuant to this policy, VA doctors refer "selected patients whose rehabilitative prospects might be enhanced by having a driver's permit or license" to a VA psychologist for evaluation as to suitability. Depending on the outcome of this evaluation, the psychologist either determines that the patient is not a suitable candidate for a license, or submits a letter of support to the RMV on behalf of the patient. The letter details the patient's medical treatment and indicates that beyond the information in the letter, the VA knows of no "contraindication" to the RMV's consideration of the patient for restoration or continuance of driving privileges. The VA acknowledges in the letter, however, that the final decision regarding a given patient's driving privileges rests with the RMV.

At some time prior to April 1990, Puzzanghera requested his treating physician, Dr. Albert Gaw, to assist him in obtaining a driver's license. Dr. Gaw referred Puzzanghera to Dr. Robert Avey, a counselling

---

\* Of the District of Massachusetts, sitting by designation.

psychologist at VAMC. After Dr. Avey evaluated Puzzanghera, he sent a letter to the RMV on his behalf. Puzzanghera subsequently received driving privileges.

In the afternoon of October 29, 1990, while Magee sat in his car at a red light, Puzzanghera rear ended Magee's car, causing bodily injury to Magee and damage to his vehicle. A police officer who arrived shortly after the accident noted that Puzzanghera appeared "very slow and deliberate in his actions." The officer performed two field sobriety tests which Puzzanghera "passed with no problem." Puzzanghera informed the officer that he was an outpatient at VAMC and had recently received a shot of Prolixin. In fact, Puzzanghera had received this shot approximately four hours prior to the accident.

Magee filed a complaint against the United States under the FTCA in which he alleged that the VA negligently allowed or enabled Puzzanghera to qualify for and obtain a driver's license while on Prolixin, negligently failed to warn Puzzanghera of the side effects of Prolixin, negligently failed to properly monitor and supervise Puzzanghera's Prolixin treatment, and negligently "fail[ed] in other respects that will be shown at trial." According to Magee, the VA's negligence caused his injuries. The district court granted summary judgment in favor of the United States on all of Magee's allegations. This appeal followed.

### Standard of Review

We review the award of summary judgment *de novo*. *See Ortiz–Pinero v. Rivera–Arroyo*, 84 F.3d 7, 11 (1st Cir.1996). Summary judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A fact is material when it has the potential to affect the outcome of the suit. *See J. Geils Band Employee Benefit Plan v. Smith Bar-*

*ney Shearson, Inc.*, 76 F.3d 1245, 1250–51 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact. *See* Fed.R.Civ.P. 56(c) & (e). The district court's analysis does not bind us. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). Instead, we may affirm or reverse on any independently sufficient ground. *See id.*

### Discussion

The FTCA vests federal district courts with jurisdiction over claims against the United States for damages caused by

the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Fourteen statutory exceptions limit this otherwise broad waiver of sovereign immunity. *See* 28 U.S.C. § 2680. To evaluate a claim brought pursuant to the FTCA, therefore, we must first determine whether an exception precludes the claim, and, if not, whether a private actor in the state where the conduct occurred would be liable to the plaintiff under the circumstances. We conclude that the discretionary function exception to the FTCA bars Magee's claim with respect to the VA's actions regarding Puzzanghera's driver's license.[1] We also conclude that Massachusetts statutory law precludes his claims of negligent treatment.

---

1. The district court analyzed Magee's complaint in negligence terms, holding that Mass. Gen. Laws ch. 123, § 36B precluded some of Magee's claims and that he failed to establish the elements of common law negligence on his remaining claims. In arriving at our conclusion we depart from the reasoning of the district court in determining that the discretionary function ex-

ception to the FTCA bars Magee's claims arising out of the VA's efforts on behalf of Puzzanghera's driver's license. We reiterate, however, that in evaluating an appeal from the grant of summary judgment, we may affirm for any independently sufficient ground supported by the record. *See Mesnick*, 950 F.2d at 822.

**4**

*A. The Letter*

As indicated, several exceptions limit the breadth of the government's potential liability under the FTCA. One, the discretionary function exception, operates to deprive a district court of jurisdiction over

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); *see Kelly v. United States*, 924 F.2d 355, 360 (1st Cir.1991) ("When a claim is covered by the discretionary function exception, it must be dismissed for lack of subject matter jurisdiction.").

█ Though not abundantly clear from the statutory language, ample authority guides our determination of whether the discretionary function exception serves to bar a claim against the government. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 322–25, 111 S.Ct. 1267, 1273–75, 113 L.Ed.2d 335 (1991); *Berkovitz v. U.S.*, 486 U.S. 531, 536–39, 108 S.Ct. 1954, 1958–60, 100 L.Ed.2d 531 (1988); *Attallah v. United States*, 955 F.2d 776, 782–83 (1st Cir.1992); *Irving v. United States*, 909 F.2d 598, 600–03 (1st Cir.1990). First, we must determine whether the conduct in question was discretionary in nature. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273; *Attallah*, 955 F.2d at 783. If the conduct was discretionary in nature, we must then consider whether it "[was] of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23, 111 S.Ct. at 1273 (internal quotation and citation omitted); *see Attallah*, 955 F.2d at 783.

█ The discretionary nature of governmental conduct depends on whether that conduct involved an element of judgment or choice. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273. We evaluate the nature of the conduct rather than the status of the actor to determine "'whether the action is a matter of choice for the acting employee.'" *Attallah*, 955 F.2d at 783 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958). An action, for example, does not involve an element of choice "if a federal statute, regulation or policy specifically prescribes a course of action for an employer to follow, because [t]he employer has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273 (internal quotation and citation omitted).

█ The language of VAMC's Veterans Driver Evaluation Program contemplates a series of steps VA staff must undertake upon deciding to assist a veteran in obtaining a driver's license. The program, however, cannot be characterized as requiring a particularized course of conduct for the VAMC staff. *See, e.g., Kelly*, 924 F.2d at 360–61 (interweaving of "imperatives with weaker, precatory verbs and generalities" may be more characteristic of discretion than of mandatory directives). Within those steps, the program leaves broad discretion to VA psychologists in their evaluation of the patient and their ultimate decision whether to write to the RMV on the patient's behalf. The program also grants broad discretion to treating physicians in deciding whether to refer interested patients to a psychologist for evaluation.

The uncontroverted deposition of Dr. Robert Avey, the VA counselling psychologist who wrote on behalf of Puzzanghera, underscores the discretionary nature of the process. Dr. Avey testified that his evaluation protocol included reviews of patient treatment histories, interviews with patients and consultations with other professionals such as physicians or social workers if necessary, all aimed at gauging the propriety of facilitating the restoration of a given patient's driving privileges. Thus, we are satisfied that VAMC's program is sufficiently discretionary to meet the first inquiry of the discretionary function exception. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273 (indicating that conduct involving element of choice or judgment is discretionary).

Having determined that the action was discretionary, we turn to the second inquiry, whether the decision of VA doctors to assist Puzzanghera in applying for his driver's license was "of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23, 111 S.Ct. at 1273 (internal

quotation and citation omitted). The exception does not serve to protect all discretionary actions of governmental employees. Instead, it "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. at 1274 (internal citation omitted). In this way, the exception serves its purpose of preventing "judicial second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *See Attallah,* 955 F.2d at 783; *Irving,* 909 F.2d at 600.

As the Supreme Court has indicated, "it will most often be true that the general aims and policies of the controlling [program] will be evident from its text." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. A government statute or program that allows the government actor discretion creates a presumption that the isolated discretionary act reflects the same considerations which led to promulgation of the program. *See id.* The exception is not reserved solely for planning level decisions establishing programs. *See id.* at 323, 111 S.Ct. at 1273–74. The exception also protects "the actions of Government agents involving the necessary element of choice and grounded in the social, economic or political goals...." *Id.* In short, "the discretionary function exception insulates the Government from liability if the action challenged ... involves the permissible exercise of policy judgment." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1958.

We view VAMC's decision to assist Puzzanghera in obtaining a driver's license as a clear, permissible exercise of policy judgment. As we have already stated, the policy contemplates significant discretion on the part of the VA staff at every step of the process. The Veterans Driver Evaluation Program includes a clearly stated policy objective, "to assist veterans to apply for driving privileges" in cases where driving privileges are likely to enhance the patient's rehabilitative prospects. This objective folds neatly into the VA's mission of providing a range of care and assistance for veterans. A series of judgments leading up to the ultimate decision under this program, whether to write to the RMV, all involve considerations of veteran rehabilitation.

■ Magee unpersuasively argues that VAMC's assistance to Puzzanghera in obtaining a driver's license constituted part of his medical treatment. In *Collazo v. United States,* 850 F.2d 1, 3 (1st Cir.1988), we held that a claim of negligent medical treatment by a government actor, unaccompanied by any discretionary, policy based conduct, falls outside the parameters of the discretionary function exception. We distinguished conduct made on purely medical grounds from conduct made pursuant to governmental policy, pointing out that where "only professional, nongovernmental discretion is at issue, the discretionary function exception does not apply." *Id.* at 3 (internal quotation omitted).

The decision to write a letter to the RMV on Puzzanghera's behalf fell within the parameters of VAMC's rehabilitative policy. Puzzanghera, not VAMC physicians, initiated the process by asking for a driver's license referral. Pursuant to the program, Dr. Avey, a counseling psychologist and not Puzzanghera's treating psychiatrist, made the ultimate decision to write a letter to the RMV on behalf of Puzzanghera. The program creates a general process applicable to all patients seeking a license; it did not constitute part of Puzzanghera's individualized medical treatment. Puzzanghera did not receive his license, for example, to help control his schizophrenia. Rather, the decision to write a letter of support was made in contemplation of his rehabilitative needs.

We conclude that VAMC's efforts on Puzzanghera's behalf with respect to the Veterans Driver Evaluation Program fall within the discretionary function exception to the FTCA. Accordingly, that exception bars the portion of Magee's claim that rests on the VA's efforts on behalf of Puzzanghera's driver's license.[2]

---

**2.** We point out that "where the government is performing a discretionary function, the fact that the discretion is exercised in a negligent manner does not make the discretionary function exception to the FTCA inapplicable." *Attallah,* 955 F.2d at 784 n. 13 (citing *Berkovitz,* 486 U.S. at 539, 108 S.Ct. at 1960). Whether VAMC negligently exercised its discretion with respect to

**6**

### B. The Prolixin

Magee also claims that the VA's negligent medical treatment of Puzzanghera caused his injuries. Specifically, Magee claims that the VA failed to properly monitor and supervise Puzzanghera's Prolixin treatment and failed to warn him adequately of the adverse side effects he might experience as a result of the Prolixin doses. Magee attributes the accident to that alleged negligent failure to warn Puzzanghera and properly supervise his treatment.

■■■ This claim derives from Puzzanghera's specific medical treatment, which as we have indicated, falls outside the protection of the discretionary function exception. *See Collazo*, 850 F.2d at 3. We do not identify, nor does the government point us to, any other statutory exception that might bar this claim. In the absence of a statutory exception, the FTCA imposes liability on the government for conduct of its employees within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place" where the conduct occurred. 28 U.S.C. § 1346(b). "To identify the applicable rule of substantive law," therefore, "the FTCA directs us to determine the substantive law that would apply to 'a private individual under like circumstances' in the jurisdiction where the injury occurred." *In re All Maine Asbestos Litig.*, 772 F.2d 1023, 1027 (1st Cir. 1985) (quoting *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963)); *see Kelly*, 924 F.2d at 359. We turn to the law of Massachusetts, the situs state, to determine whether Magee can hold the government liable in this case.

■■■ We agree with the district court that Magee failed to provide evidence in the record from which a jury could have found that the VA's treatment of Puzzanghera caused the accident.[3] *See Borden v. Betty Gibson Assoc., Inc.*, 31 Mass.App.Ct. 51, 574 N.E.2d 1020, 1022 (1991) (indicating that causation is necessary to recovery for negligence). Magee points to the Prolixin shot Puzzanghera received four hours prior to the accident, the various side effects Puzzanghera experienced as a result of the Prolixin, namely restlessness and difficulty controlling his tongue, the police officer's notation that Puzzanghera appeared slow and deliberate at the scene of the accident, Magee's own impression of Puzzanghera at the scene, and Puzzanghera's inability to remember the details of the accident.

Magee does not, however, explain how any of these pieces of evidence, either in isolation or in the aggregate, would allow a jury to conclude that the VA's alleged negligent treatment of Puzzanghera caused the accident. Nothing in the record suggests, for example, that the restlessness or tongue control side effects somehow caused Puzzanghera to drive into Magee. Nor does the record offer a basis to conclude that the police officer's characterization of Puzzanghera related to his treatment at VAMC.[4] In short, Magee lacks any evidence that would allow a jury to base a conclusion as to causation on anything other than speculation. *See id.* (indicating that a recovery in negligence cannot be based on speculation as to causation).

### Conclusion

For the foregoing reasons, we affirm the district court's disposition of Magee's complaint.

*Affirmed.* Costs to Appellee.

---

Puzzanghera's driver's license, therefore, is irrelevant to our analysis.

3. We note that Mass. Gen. Laws ch. 123, § 36B would appear to bear on the question of whether VAMC had any duty to Magee. Given that the Massachusetts Supreme Judicial Court has not yet construed § 36B and our own conclusion that the record fails to support at least one essential element of negligence, we need not determine the applicability of § 36B to this case.

4. Magee's expert, Dr. Catherine Larned, points to Puzzanghera's medical records and notes that on one occasion (June 12, 1990) Puzzanghera appeared "somewhat lethargic" at an appointment, and that on another occasion (June 19, 1990) Puzzanghera reported that a nap on his lunch break caused him to return late to work. The record, however, in no way supports even an inference that Puzzanghera was either experiencing these indications at the time of the accident, or that they were caused in any way by Puzzanghera's treatment at VAMC.