James B. CAMPBELL, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. Civ.A. 00–11942–NMG.

United States District Court, D. Massachusetts.

Sept. 28, 2001.

---

Edmund M. Pitts, Pitts & Pitts, Lynn, MA, for plaintiff.

Mary Elizabeth Carmody, United States Attorney's Office, Worcester, MA, for defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

On September 21, 2000, the plaintiff, James B. Campbell ("Campbell") filed a complaint in the United States District Court under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, seeking damages in the amount of $800,000 against the defendant, United States of America ("United States"). Campbell's claims arise out of injuries he sustained from an assault and battery by an enlistee of the United States Navy, Seaman John Hernandez, Jr., who was stationed, at the time of the assault and battery, aboard the USS Constitution at the Charlestown Navy Yard in Boston, Massachusetts.

Currently pending before this Court are 1) the United States' contested motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) (Docket No. 14), 2) Plaintiff's opposition in which he seeks discovery of all standing orders, regulations, and ship orders of the USS Constitution Docket No. 19), 3) a letter to the presiding judge from the sea-man's commanding officer requesting a stay of court proceedings (Docket No. 18), and 4) Defendants' request for an abeyance of this Court's Order directing John Hernandez, Jr. to disclose his residential and work addresses to the plaintiff (Docket No. 17).

### I. *Defendant's Motion to Dismiss*

#### A. Legal Standard

■ In considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the Court assumes that all material allegations set forth in the complaint are true. *See Mulloy v. United States*, 884 F.Supp. 622, 626 (D.Mass.1995); *Williams v. City of Boston*, 784 F.2d 430, 433 (1st Cir.1986). The averments of the complaint, as well as their proper inferences, are construed in favor of the plaintiff and the claim will not be dismissed unless "it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Williams*, 784 F.2d at 433; *see Mulloy* 884 F.Supp. at 626.

#### B. Factual Background

The following facts are synthesized from the pleadings and are construed in a light most favorable to the plaintiff. On September 22, 1997, Campbell, a 58–year–old licensed engineering officer in the U.S. Merchant Marine Service with civilian status, was employed as a primary contractor engaged in the renovation of the SS Noboska. The SS Noboska is an historic ferry vessel docked in the Charlestown Navy Yard several hundred feet from where the USS Constitution is generally moored.

Campbell alleges that as he walked along the dock on his way to work on the SS Noboska at approximately 7:00 AM, he was nearly struck by a vehicle recklessly

driven by one Seaman Oliver. Although Campbell was not injured, he proceeded towards the USS Constitution to lodge a complaint with members of the crew. Seaman Downes, a female crew member assigned as Officer of the Deck and "watch stander," was located in the guard shack, a small 10–foot–square building located about 25 feet from the foot of the gangway (or "brow") of the USS Constitution. As such, Campbell claims that Downes had the responsibility to guard the USS Constitution, respond to incidents in the dock area and prevent unauthorized persons from boarding the USS Constitution. As Campbell approached the ship shouting at Naval personnel that he wanted Seaman Oliver reported, crew members on the quarter deck of the USS Constitution "jeered" at him.

One of the jeering crew members, Seaman John Hernandez, Jr., came down from the deck of the vessel and entered the guard shack where he picked up a hammer and hid it behind his right leg. Hernandez then approached Campbell, who was about 10 or 15 feet from the gangway of the vessel, and, with the hammer, struck Campbell on the forehead, over his right eye, rendering him unconscious and causing other injuries as he fell to the dock on his back.

Campbell's complaint broadly alleges that the United States is liable for negligence for allowing the assault and battery upon Campbell. It specifically alleges that Seaman Downes and another sailor negligently allowed Hernandez to enter the guard shack and obtain the hammer and that they negligently failed to prevent the ensuing assault and battery. Finally, the complaint alleges that the supervisory personnel, one Lieutenant Commander Bloom and the officers next in the chain of command, negligently failed to assign responsible navy personnel to control the actions of members of the crew in their absence.

## C. Analysis

The FTCA waives sovereign immunity and grants federal district courts jurisdiction over claims against the United States:

for money damages … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

### 1. Scope of Employment

█ The defendant argues that when Hernandez committed the assault and battery, he was not acting within the scope of his employment with the United States Navy and therefore Plaintiff's claim is not cognizable under the FTCA § 1346(b). The plaintiff does not, however, allege that the government is vicariously liable for the intentional tort of Seaman Hernandez. Rather, he alleges that the government is vicariously liable for the negligence of supervisory personnel who failed to control the actions of Hernandez and failed to appoint a responsible officer to oversee the conduct of members of the crew of the USS Constitution. The appropriate questions the plaintiff would have this Court answer are, therefore, whether Officer Downes was acting within the scope of her employment when she negligently failed to prevent the assault by Hernandez and whether Lt.Cmdr. Bloom and his subordinate officers were acting within the scope of their employment when they

failed to assign responsible personnel to supervise the crew of the ship.

■ The law of the state in which the tortious act allegedly occurred determines whether the employee was acting within the scope of his employment at the time of the alleged negligence. *See Lyons v. Brown,* 158 F.3d 605, 609 (1st Cir.1998); *see also Cardozo v. Graham,* 848 F.Supp. 5, 7 (D.Mass.1994). In Massachusetts, conduct falls within the scope of employment if:

> (a) the conduct is of the kind the employee is employed to perform, (b) it occurs substantially within the authorized time and space limits, and (c) it is motivated, at least in part, by a purpose to serve the employer.

*Burroughs v. Commonwealth,* 423 Mass. 874, 877, 673 N.E.2d 1217 (1996).

Petty Officer Downes, Lt.Cmdr. Bloom, and the officers next in the chain of command were exercising conduct of the kind they were employed to perform. As the Officer of the Deck and "watch stander," Downes was required to monitor individuals on or around the USS Constitution and to respond to incidents involving visitors to the ship. Therefore, her response to the incident involving the plaintiff constitutes the very conduct she was employed to perform. As supervisory officers, Lt. Cmdr. Bloom and his subordinate officers were responsible for assigning personnel to watches. Their decisions to remain absent from the ship and to fail to assign and supervise responsible personnel, as alleged by the plaintiff, constitute conduct of the kind they were employed to perform.

The conduct of the supervisory personnel occurred within the authorized time and space limits. Downes was aboard the ship working as the "watch stander" at the time the alleged injuries occurred. Lt. Cmdr. Bloom and his subordinate officers committed their allegedly negligent conduct of failing to assign and supervise at the time of the incident.

The third prong of the "scope of employment" test evaluates whether the action was motivated, at least in part, by a purpose to serve the employer. Petty Officer Downes' response to the incident involving the plaintiff was motivated by a purpose to serve her employer, the United States Navy. As Officer of the Deck and "watch stander," the purpose of her response to the disturbance was to protect her crew, bystanders and the ship. Likewise, Lt. Cmdr. Bloom and his subordinate officers made their personnel decisions to serve the U.S. Navy because personnel decisions are intended to ensure the safety of U.S. Navy ships and promote efficient operations.

In summary, the plaintiff has stated facts sufficient to establish, if proved, that the government employees, Petty Officer Downes, Lt.Cmdr. Bloom, and his subordinate officers, were acting within the scope of their employment at the time of the alleged negligence.

### 2. Assault and Battery Exception to the FTCA's Waiver of Sovereign Immunity

■ The FTCA excepts certain intentional torts from its general waiver of sovereign immunity, including:

> [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

28 U.S.C. § 2680(h).

The United States argues that Campbell's complaint must be dismissed on the grounds that assault and battery are explicitly excepted from the FTCA's waiver of sovereign immunity. Because the claim is one of negligence as opposed to assault

and battery, the government's motion to dismiss pursuant to § 2680(h) will, however, be denied.

Although the term "arising out of" is sufficiently broad to bar all claims based entirely on an assault or battery, it is undisputed that § 2680(h) will not always preclude government liability. *See Sheridan v. The United States,* 487 U.S. 392, 401, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In *Sheridan,* the Supreme Court distinguished between assault and battery as such, and the negligent failure to prevent an assault and battery. The Supreme Court held that:

> the negligence of other government employees who allowed a foreseeable assault or battery to occur may furnish a basis for governmental liability that is entirely independent of [the employee's] employment status.

*Sheridan,* 487 U.S. at 401, 108 S.Ct. 2449, (finding that because the government voluntarily assumed a responsibility to provide care to a noticeably intoxicated person carrying a weapon, it would not be shielded from liability when its negligent failure to provide such care resulted in an intentional tort by a government employee).

One concern of the *Sheridan* court, in not upholding a broad interpretation of the "arising out of" language of § 2680(h), was that plaintiffs would be able to circumvent § 2680(h)'s exclusion simply by framing an assault and battery claim in terms of a negligence claim for failure to prevent the assault and battery. The Court feared that a plaintiff would need only find some hint that the government had prior awareness of the employee's dangerous tendencies to bring the case to trial. Such a result would defeat the purpose of § 2680(h) of "avoiding strict government liability for intentional torts which it is powerless to prevent." *Mulloy v. United States,* 884 F.Supp. 622, 628 (D.Mass.1995).

■ Under *Sheridan,* the government will therefore be held liable for negligence for failure to prevent an assault and battery only where it breaches an independent duty owed to the victim to refrain from acting in a way which would place the victim in foreseeable danger. *See Mulloy,* 884 F.Supp. at 631; *Thompson v. United States,* 1985 WL 4999, *5 (D.Mass.1985); *Loritts v. United States,* 489 F.Supp. 1030 (D.Mass.1980) (denying a motion to dismiss under § 2680(h) because West Point negligently breached the duty it created when it voluntarily undertook to provide escorts to members of an invitee all-female choral group).

Because the United States Navy voluntarily hosts approximately one million visitors each year on board the USS Constitution a "special relationship" exists between the government and visitors to the ship. The nature of the tourist activities undertaken by the United States Navy creates a special relationship between the government and the public. *See Sheridan,* 487 U.S. at 401, 108 S.Ct. 2449. The United States assumes a duty to provide a safe and hospitable environment to those who visit U.S. Naval ships. The existence of such a duty requires U.S. Navy personnel to be responsible for the safety and well-being of those on and around the USS Constitution and to take all reasonable measures to prevent occurrences like the one in the instant case.

In addition, because the government hired Campbell to renovate another ship within the Navy Yard, it may also have assumed a duty to provide him with a safe environment in which to work. *See Mulloy,* 884 F.Supp. at 632 (finding that the United States Army owed a duty to the wife of a soldier stationed on one of its bases because she was an invitee and tenant of the Army).

■ The more difficult hurdle for the plaintiff to clear is the foreseeability re-

quirement. Courts have found the intentional torts of employees to be foreseeable where there is ample evidence of violence in the employee's past. In *Mulloy*, there was evidence that the employee who committed the assault had previously been convicted of serious crimes. *See id.* at 625. In a District of Columbia case cited by the plaintiff, a hospital employee who sexually assaulted a patient had a history of psychological problems. In addition, the employee repeatedly assaulted the patient after complaints were made to the hospital. *See Bembenista v. United States*, 866 F.2d 493, 495 (D.C.Cir.1989). Finally, in *Sheridan*, a significant amount of time had passed between the time the U.S. Naval personnel discovered the intoxicated employee with a firearm and the time the employee fired it into the plaintiffs' car. *See id.* at 395, 108 S.Ct. 2449.

Here, the plaintiff alleges that the officers in charge failed to assign responsible personnel to control the actions of Hernandez, and that the petty officer on duty negligently failed to prevent Hernandez from hiding a hammer behind his back and using it to strike the plaintiff. There are no allegations that Hernandez had a history of violence. In addition, apparently, very little time passed between Hernandez' grabbing the hammer and striking the plaintiff, that there is some question whether, even if Seaman Downes had noticed it, she would have been able to prevent the assault. Nevertheless, construing the facts in the light most favorable to the plaintiff, a jury could find that Downes should have foreseen that Hernandez would assault the plaintiff by virtue of her observations and should have made an effort to intercede.

### 3. The FTCA's Discretionary Function Exception

■ The final argument made by the United States in its motion to dismiss challenges the validity of a claim that:

Lt.Cmdr. Bloom and the chief petty officers in the chain of command were absent from the vessel, and negligently omitted to assign a responsible officer or chief petty officer to control the actions of the lower ranking members of the crew.

The United States argues that this claim is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) and therefore must be dismissed.

■ In *Magee v. United States*, 121 F.3d 1 (1st Cir.1997), the First Circuit reiterated the long-held principle that the discretionary function exception applies

to any claim ... based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Magee*, 121 F.3d at 4 (1st Cir.1997). In order to determine whether a claim is subject to the discretionary function exception, the court must apply a two-prong test. The Court must determine 1) whether the conduct in question was discretionary in nature, see *Magee*, 121 F.3d at 4; *see also Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), and, if so, 2) whether it was the kind of conduct that "the discretionary function was designed to shield." *Gaubert*, 499 U.S. at 322–23, 111 S.Ct. 1267.

■ The discretionary function exception protects only those "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 315, 111 S.Ct. 1267. In that way, the exception prevents "judicial second guessing" of legislative and administrative decisions grounded in social, economic and po-

litical policy through the medium of an action in tort. *Magee,* 121 F.3d at 5.

 Conduct is not discretionary if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. *See Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267. However, "where there is room for policy judgment and decision, there is discretion." *United States v. Varig Airlines,* 467 U.S. 797, 811, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In addition, the law presumes that the exercise of discretion implicates public policy, and the plaintiff must show that the decision was not susceptible to policy analysis. *See Shansky v. United States,* 164 F.3d 688, 692 (1st Cir.1999).

It is unclear from the pleadings whether there are standing orders or policies that dictate how personnel of the USS Constitution are to be assigned to duties, particularly during those instances when Lt. Cmdr. Bloom and his subordinate officers are not on board. If there are specific orders about duties and supervision aboard the USS Constitution, the conduct of Lt. Cmdr. Bloom and officers would not be discretionary and would be outside the protection of § 2680(a). On the other hand, if there are no regulations regarding such supervision, the conduct of the officers would be discretionary and protected from the second-guessing of this Court. Without further discovery it would be inappropriate to dismiss the negligent staffing and supervision claim on the grounds of discretionary function.

 The complaint includes allegations that the United States Navy has a policy that in the event of an incident with a member of the public, the Officer of the Deck of the USS Constitution is to call the National Park Service by radio or telephone from the quarter deck shack for assistance. If those allegations are true (as it is assumed), the response of Petty Officer Downes to the presence of Campbell and Seaman Hernandez on the dock did not involve a discretionary function and would, therefore, survive § 2680(a) scrutiny.

### III. *Plaintiff's Discovery Request (Docket No. 19)*

 The plaintiff requests copies of all standing orders, regulations, and the ship's orders relating to the conduct of Navy personnel towards members of the public in the dock area and to the duties of the Officer of the Deck in order to determine whether regulations existed to govern the conduct of the supervisory personnel. The defendant argues that discovery should not be allowed because the application of the discretionary function exception is not fact dependent.

Discovery is allowed "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R.Civ.P. 26(b)(1). Whether the government has promulgated rules that govern the actions of supervisory personnel on the USS Constitution is relevant to the plaintiff's claim for negligence under the FTCA. Contrary to the defendant's argument, the issue of whether the actions of personnel fall within the discretionary function exception is a question of fact and depends on whether regulations exist that govern a course of action. Therefore, this Court will allow discovery on the issue of the discretionary function exception.

### IV. *Request for a Stay of Court Proceedings (Docket No. 18)*

A letter dated April 3, 2001 written by a Mr. R.A. Williams "by direction of the Commanding Officer" of USS John F. Kennedy, the ship to which Seaman Hernandez is now assigned, was addressed to the presiding judge of this Court request-

ing that the Court stay proceedings in this case until July 27, 2001 because of Mr. Hernandez' military commitments. Although this issue is now moot, the Court directs the government to refrain in the future from any communication with this Court other than through counsel and the filing of appropriate pleadings.

## V. *Defendant's Request to Hold Order in Abeyance (Docket No. 17)*

The defendant has requested this Court to hold in abeyance the Order directing Seaman John Hernandez, Jr. to disclose his work and residential addresses to the plaintiff until the defendant is able to determine whether Mr. Hernandez will agree to accept service of process in the pending state action through the U.S. Attorney's Office and his present command in the U.S. Navy. The defendant based its request on the grounds that the plaintiff allegedly engaged in inappropriate behavior toward Hernandez during the court martial proceeding in which the plaintiff was a witness causing Hernandez to fear for his safety and for the safety of his family.

If Hernandez promptly agrees to accept service of process through the United States Attorney's Office and his present command in the U.S. Navy, he need not disclose his addresses to the plaintiff. If he refuses such acceptance, he will disclose his current work and residential addresses to the plaintiff's counsel for the purpose of service of process in the state case.

### ORDER

For the reasons set forth in the memorandum above:

1) the defendant's motion to dismiss (Docket No. 14) is DENIED;

2) the plaintiff's request for discovery of standing orders and regulations relating to the conduct of the ship's

personnel towards members of the public (Docket No. 19) is ALLOWED; and

3) the defendant's request to permit the witness, John Hernandez, Jr., to withhold his current residential and work addresses from the plaintiff (Docket No. 17) is ALLOWED on the condition that, within thirty (30) days from the date of this Order, he agrees to accept service of process in the state action pending against him through the United States Attorney's Office and his present United States Navy command. Otherwise, the motion is DENIED.

So ordered.