June KOUSSA, Plaintiff,

v.

**UNITED STATES of America,
Defendant.**

No. CIV.A. 02–114S.

United States District Court,
D. Rhode Island.

April 14, 2003.

John O. Mancini, Esq., Ferrucci Russo P.C., Providence, RI, for Plaintiff(s).

Margaret E. Curran, Esq., U.S. Attorney, Dulce Donovan, Assistant U.S. Attorney, Providence, RI, for Defendant(s).

### MEMORANDUM OPINION

SMITH, District Judge.

Plaintiff June Koussa filed her Amended Complaint on July 29, 2002, alleging that Defendant United States of America is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, for personal injuries sustained by Koussa when she tripped and fell over a speed bump located in the parking lot of the United States Post Office in Wakefield, Rhode Island. This case is now before the Court on the United States' Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] The United States claims that the Plaintiff's FTCA cause of action fails because of the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a). Because this Court does not agree that the discretionary function exception to the FTCA applies to the placement of a speed bump at the Wakefield Post Office, the United States' motion must be denied.

### I. *Standard of Review*

In considering a motion to dismiss for lack of subject matter jurisdiction, the Court assumes that all material allegations set forth in the Plaintiff's Complaint are true. *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986). Factual averments in the complaint, as well as any reasonable inferences that might be drawn from them, are construed in favor of the plaintiff. *Id.* at 433. *See Campbell v. United States,* 167 F.Supp.2d 440, 443 (D.Mass.2001). When ruling on a 12(b)(1) motion, "the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996).

### II. *Facts*

The Plaintiff is a resident of Narragansett, Rhode Island. On August 24, 1999, Ms. Koussa visited a United States Post Office in nearby Wakefield, Rhode Island. While entering the post office, Ms. Koussa "slipped and fell to the pavement in front of the entrance to the Post Office." Amended Compl. ¶ 6. The Amended Complaint does not so specifically state, but

---

1. In both its memoranda in support of its Motion and at oral argument, the United States indicated that while the instant motion was initially characterized as a Motion for Judgment on the Pleadings, it should have been framed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Because the United States addressed this procedural problem in advance of argument and the Plaintiff concurred with the United States' characterization of the Motion without objection, this Court will treat the Motion as one to dismiss for lack of subject matter jurisdiction.

representations made by Plaintiff's counsel at the Rule 16 Conference and in defense of this Motion indicate that Ms. Koussa tripped over a speed bump located in a travel lane of the post office parking lot. *See* Memorandum of Law in Support of Objection to Defendant's Motion for Judgment on the Pleadings at 2.

Shortly following the time the United States Postal Service ("USPS") moved into its Wakefield facility, customers began complaining about the high rate of speed at which some vehicles traveled in the post office parking lot. In response, Postmaster William Harrington (the "Postmaster") placed "5 mph" speed limit signs at the entrance to the parking lot. However, despite these efforts, the speeding problem continued.

Due to the continued concerns regarding the excessive speed of vehicle traffic in the post office parking lot, the Postmaster placed two speed bumps in the travel lane in front of the post office. The speed bumps were bright yellow, six feet long, ten inches wide, and two inches in height.

As a result of her fall, Ms. Koussa claims to have suffered numerous injuries, including knee abrasions, a broken nose, a concussion, neck pain and discomfort. Amended Compl. ¶ 7. On August 8, 2001, Ms. Koussa submitted an administrative tort claim to the USPS seeking $50,000 in damages. The claim was denied on September 4, 2001. This cause of action followed.

### III. *Analysis*

The FTCA is a limited waiver of the federal government's sovereign immunity. *See Shansky v. United States*, 164 F.3d 688, 690 (1st Cir.1999). The FTCA provides a basis for civil actions against the United States as follows:

> [For] the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). However, the FTCA is replete with exceptions.

In this case, the United States asserts that Plaintiff's claim is barred by the "discretionary function" exception to the FTCA.[2] *See* 28 U.S.C. § 2680(a). If that exception applies to the challenged governmental conduct, the United States has not waived its sovereign immunity and this Court will lack subject matter jurisdiction over the Plaintiff's Complaint. *See Wood v. United States*, 290 F.3d 29, 36 (1st Cir.2002); *Attallah v. United States*, 955 F.2d 776, 783 (1st Cir.1992) ("[C]ases which fall within the discretionary function exception must be necessarily dismissed, as a matter of law, for lack of subject matter jurisdiction.").

The discretionary function exists "to protect the 'discretion of the executive or administrator to act according to one's judgment of the best course.'" *Wood*, 290

---

**2.** The discretionary function exception provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to-
>     (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such

statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

F.3d at 36 (quoting *Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)). The United States Supreme Court has provided lower courts with a framework to determine whether the discretionary function exception applies in an individual case. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The first step in determining the applicability of the exception is to identify the conduct that allegedly caused the harm at issue. *Id.* at 322–23, 111 S.Ct. 1267. Here, the relevant government conduct is the Postmaster's decision to place speed bumps in the travel lane at the Wakefield Post Office.

Next, the Court must determine whether the identified conduct involved an element of judgment or choice. *Id.* In *Gaubert*, the Supreme Court held that conduct is non-discretionary when a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow...." *Id. See Wood*, 290 F.3d at 36. If it determines that the conduct involved an element of judgment or choice, the Court must "determine whether that judgment is of the kind that the discretionary function exception was designed to shield," *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); that is, whether it was "grounded in social, economic, and political policy" considerations or at least based on considerations of public policy. *Id.* at 537, 108 S.Ct. 1954. In creating such an exception, "Congress intended 'to protect the government from liability that would seriously handicap efficient government operations.'" *Wood*, 290 F.3d at 36 (quoting *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)). Statutes, regulations and agency guidelines are appropriate sources for courts to look to in determining established government policy. *Id.* (citing *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267). When a function is

discretionary, there is a presumption that "the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In other words, it is the plaintiff's burden to show that the decision does not lend itself to a public policy analysis. *See Shansky*, 164 F.3d at 692.

This Court finds that the Postmaster's decision in this case was discretionary. The Postmaster's decision to place speed bumps in the traffic lane at the Post Office clearly involved an element of judgment or choice. There are no statutes or regulations mandating that the Postmaster act in a specific manner with respect to the erection of speed bumps, or more generally, traffic regulation. The statute or regulation that most closely regulates such conduct involves a postal regulation, which provides the Postmaster with the authority to implement vehicular and pedestrian traffic requirements when deemed necessary. *See* 39 C.F.R. § 232.1(k)(5). This regulation specifically provides the Postmaster with discretion in its text. Therefore, because no statutes or regulations mandate a specific course of action with respect to the erection of speed bumps, this Court holds that the Postmaster's conduct was discretionary.

In order for conduct deemed discretionary to fall within the discretionary function exception of the FTCA, the government decision must have involved, or at least be susceptible to, policy related judgments. *See Wood*, 290 F.3d at 36 (citing *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267). It is not always clear when governmental conduct implicates public policy. While the Supreme Court has provided lower courts with some guidance in this area, the determination of whether governmental conduct is policy related still requires a case-by-

case approach.[3] *Shansky*, 164 F.3d at 693.

In this case, the Plaintiff essentially argues that the Postmaster's decision to place speed bumps in the travel lane at the Post Office implicates USPS' obligation as an occupier of land to act reasonably with respect to visitors who might come upon the land.[4] In other words, while the USPS may have balanced financial and social concerns when deciding whether to install the speed bumps, these issues only related to the USPS as a landowner, and not as a government agency. In response, the United States contends that USPS' overall mission to "provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people" is broad enough to provide the Postmaster with policy-related reasons for installing speed bumps in the travel lane at the Post Office. 39 U.S.C. § 101(a).

Courts have held, however, that not all decisions made by the USPS implicate the type of policy decisions envisioned by the discretionary function exception. *See Raymond v. United States*, 923 F.Supp. 1419, 1423 (D.Kan.1996); *Gonzalez v. United States*, 690 F.Supp. 251, 255 (S.D.N.Y.1988) (no immunity applied when a stanchion fell on plaintiff in a post office, because the relevant decision did not arise from the agency's "statutory mission"). In *Raymond,* the plaintiff brought suit under the FTCA against the postal service when she slipped and fell on tile outside the door to a post office. The government argued that the discretionary function exception barred the plaintiff's suit. The court held, however, that the postal service's decision not to place a handrail or mat in the entrance way was "not the result of a governmental decision based on considerations of public policy[.]" 923 F.Supp. at 1423.

This Court agrees with the holdings in *Raymond* and *Gonzalez*. While the Postmaster's decision to place speed bumps in the travel lane at the Post Office inevitably implicates various safety and financial considerations, at least on some level, these decisions were made by the USPS in its role as a landowner as opposed to a government entity. The USPS has a unique governmental function in that its facilities and employees interact with the general public on a frequent, even constant, basis as it facilitates the delivery of the mail. However, not every decision its employees make is so closely related to the USPS mission as to be considered government conduct worthy of protection under 28 U.S.C. § 2680(a). To hold otherwise would virtually eviscerate the purpose of the FTCA whenever the USPS is involved.

---

**3.** Perhaps the First Circuit described the uncertainty present in this area best in its *Shansky* decision.

We do not suggest that any conceivable policy justification will suffice to prime the discretionary function pump. Virtually any government action can be traced back to a policy decision of some kind, but an attenuated tie is not enough to show that conduct is grounded in policy.... [T]he determination as to where one draws the line between a justification that is too far removed, or too ethereal, or both, and one that is not, is case-specific, and not subject to resolution by the application of mathematically precise formulae.

164 F.3d at 692–93 (internal citation omitted).

**4.** The Plaintiff also contends that the USPS's installation of the speed bumps was merely an operational decision not grounded in public policy concerns. *See* Memorandum of Law in Support of Objection to Defendant's Motion for Judgment on the Pleadings at 6. This argument, however, is without merit because the Supreme Court specifically rejected the "planning/operation distinction" when analyzing the applicability of the discretionary exception. *See Gaubert*, 499 U.S. at 325–26, 111 S.Ct. 1267; *Shansky*, 164 F.3d at 695 n. 6.

Of course, depending on the factual circumstances of a given case, the USPS may very well engage in conduct that warrants application of the discretionary function exception. *See, e.g., Shrieve v. United States,* 16 F.Supp.2d 853, 859 (N.D.Ohio 1998) (Postmaster's decision to place mail boxes on only one side of roadway clearly implicates a policy decision deserving of protection under the discretionary function exception); *Gager v. United States,* 149 F.3d 918, 922 (9th Cir.1998) (Postmaster's decision not to train employees in mail-bomb detection implicates discretionary function exception); *Higgins v. United States,* 894 F.Supp. 232, 235 (M.D.N.C. 1995) (Postmaster's decision not to provide additional security at inter-city post office implicated public policy). However, in this case, the Court holds that the nature of USPS's conduct is simply too far removed from its governmental role to trigger application of the discretionary function exception.[5] State common law imposes on USPS the same duty of reasonable care it imposes on any property owner.

III. *Conclusion*

For the reasons states above, the United States' Motion is DENIED.

It is so ordered.

---

[5] In so holding, this Court is not endorsing the operational/planning distinction that was dismissed by the Supreme Court in *Gaubert.* USPS employees, whether the Postmaster or a lower-level employee, can engage in conduct that implicates public policy that would therefore warrant application of the discretionary function exception. However, certain conduct, as the Court holds in this case, can be too far removed from a governmental entity's overall purpose so as not to implicate the exception. *See Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267 ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.") (internal citation omitted).